# APRIL, 1923.

---

GEORGE FINDLAY ET AL. v. STATE OF TEXAS.

Decided April 18, 1923.

(250 S. W., 651).

1.—Supreme Court—Findings of Fact.

Findings of fact by the trial court, confirmed by the findings of the court of Civil Appeals and which there was evidence to support, are binding on the Supreme Court in its review of the case on writ of error. (P. 43).

**2.—Same.**

See findings here held conclusive of the fact that the Capitol Freehold Land and Investment Co., and the trustees holding for its benefit by assignment title to the lands conveyed to Taylor as compensation for constructing the State Capitol building were privy in interest and estate with said Taylor and stood in the same position with regard to the right of the State to recover an excess in the acreage of said lands, as surveyed and patented. over the acreage due him under the contract; and this notwithstanding changes in the ownership of the stock of such Investment Co.    (P. 43).

**3.—Patent—Excess in Survey—Recovery by the State.**

A contract by the State to grant public land previously surveyed into tracts of one league each and containing by estimate 3,000,000 acres, as compensation for constructing a State Capitol Building is construed as providing for 3,000,000 acres as the total compensation, and not for the several leagues as so surveyed, irrespective of any excess therein, and as warranting the recovery back by the State from the grantee of the excess over 3,000,000 acres included in such surveys by mutual mistake.    (Pp. 43, 44).

**4.—Same.**

The fact that the Constitution and the statute authorized appropriation of public land for the State Capitol building to the extent only of 3,000,000 acres, and that the parties construed the contract as calling for such acreage by making a supplemental agreement to compensate the contractor by other surveys of public land for a shortage discovered in such amount by reason of certain surveys being beyond the limits of the State are considered as bearing on the construction of the contract as being one for a definite acreage, and not for the tracts as surveyed though proving short or in excess thereof.    (P. 44.)

**5.—Survey—Patent—Excess—Contract.**

Though the surveyed and numbered leagues were patented at different times, in their numerical order, and on estimates as the work progressed, the patentees did not take absolute title to such patented surveys where excessive, leaving the excess to be compensated from the lands not yet patented. Nor was the excess in each survey necessarily to be recovered out of that survey if at all.    The excesses in the patented tracts were applicable to the entire contract for 3,000,000 acres as a whole and could be recovered out of such portion as remained in the hands of the contractor after selling off to others certain of the surveys.    (Pp. 44, 45).

**6.—Same—Tenants in Common—Partition.**

The State, being a tenant in common with the patentee of the land as a whole to the extent that it was entitled to recover excesses in the acreage granted, could affirm the patentees' conveyances of parts thereof to purchasers and elect to recover and have partition thereof from the lands of which title remained in the hands of the patentee.    (Pp. 45-47).

**7.—Vendor and Purchaser—Right to Purchase Excess.**

The right of the contractor being to receive 3,000,000 acres of land for the construction of the building, not to the tracts surveyed for that purpose irrespective of their acreage, he acquired no right to purchase the excess at the same price per acre paid for that to which he was entitled. Especially so since the contract was for a fixed number of acres for doing the work, and furnished no means of determining a price per acre therefor. Willoughby v. Long, 96 Texas, 194, distinguished.    (Pp. 47, 48).

8.—Grant—Excess—Survey—Partition.

The Court of Civil Appeals properly awarded the State a recovery of the lands patented, to the extent of their excess over the contract compensation of 3,000,000 acres, and the right to have the same partitioned to it out of the portion of such lands remaining in the hands of the grantee.   (P. 49).

9.—Survey—Vacancy—Excess.

The State claiming to recover, in addition to excess in surveys, supposed vacancies between certain surveys, and it being determined that such surveys, though excessive, were connecting ones, leaving no vacancy, the Court of Civil Appeals had power, under pleadings seeking such alternative relief, by art. 1626, Rev. Stats., to add this excess to that found in other surveys, and to award recovery and partition therefor.   (P. 48).

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State brought four suits against Findlay and others for the recovery of land. They were consolidated and disposed of by one judgment in favor of plaintiff, from which defendants appealed. The judgment was modified and affirmed (238 S. W., 956) and appellants obtained writ of error.

*I. W. Stephens, Horace Kent Pinney,* and *Geo. T. Rodgers,* for plaintiffs in error Geo. Findley, Francis C. Farwell, and Hobart C. Chatfield-Taylor, Trustees.

The Court of Civil Appeals erred in affirming the judgment of the District Court granting a partition of the lands now held by your petitioners, because the suit was in equity for the reformation of a contract for the sale of land, on the ground of mutual mistake as to the quantity of land conveyed, brought more than thirty-five years after the contract was made, and more than thirty-five years after it was discovered that a mistake had been made, and after the lands had been improved, passed into the hands of various owners and had become valuable, and after there had been such change in the condition of the lands and the relation of the parties, by death and otherwise, that the court could not place the parties in statu quo, and because the plaintiff failed to show a superior equity, in that, what the State received for the land was of more value than all the land disposed of by the State, including the excess, which was less than was usual in the disposition of the state lands, being less than 2 per cent, as found by the Court of Civil Appeals. The right to have a mistake corrected must exist upon a superior equity of the parties seeking the remedy. If he has been paid all that the land is worth, or if conditions have changed the lands or the relation of the parties, equity will not grant relief.   34 Cyc., 905; Henderson v. Dickey, 35 Mo., 120; Ketcham v. Stout, 20 Ohio, 453; Rockefeller v. Merritt, 76 Fed., 909; Tazewell Coal Co. v. Gillespie, 75 S. E., 757; Pickrell v. Castle-

man, 174 Ky., 1; Baldwin v. Christopher, 79 So., 339; Campbell's Executors v. Wilmore, 29 Ky., 208; Silurian Oil Co. v. Neal, 277 Ill., 45.

Equity will not correct a mistake where there has been delay in seeking the remedy, except upon the most explicit and unequivocal proof, and where the certainty of error appears beyond reasonable doubt, and then only where there has been a strong showing excusing the delay. 34 Cyc., 990; Eastham, Executor, v. Randolph, 3 Texas App. Civ. Cases, Sec. 117; Kreiter v. Bomberger, 82 Pa. State., 59, 64; Thomas v. Bartow, 48 N. Y., 193, 200; Baldwin v. Christopher, 79 So., 339; Grymes v. Sanders, 93 U. S., 55-61-62; Rowe v. Horton, 65 Texas, 90, 92; 39 Cyc., 2018; H. & T. C. Ry. Co. v. Van Alstyne, 56 Texas, 439.

This rule operates against a State as well as against individuals. Bell v. McDonald, 9 Texas, 378; Fristoe v. Blum, 92 Texas, 76; State v. Ill. Cen. R. R. Co., 246 Ill., 188; Willoughby v. Long, 96 Texas, 194; United States v. Stinson, 197 U. S., 200.

The ordinary rules of justice and equity are to be applied to a sovereign as well as to individuals when it invokes the aid of the courts. Walker v. United States, 139 Fed., 409; State of Indiana v. Milk, 111 Fed., 389; State of Ill. v. Cen. R. R. Co., 246 Ill., 188; State v. Galveston City Co., 38 Texas, 12; United States v. San Jacinto Tin Co., 125 U. S., 273; State v. Zancho's Heirs, 44 S. W., 527; G. H. & S. A. R. Co. v. State, 77 Texas, 367.

The Court of Civil Appeals erred in the judgment of affirmance entered herein December 7, 1921, and in the conclusions and opinion filed December 9, 1921, and in overruling the motion for rehearing, and in the opinion filed March 8, 1922, in construing the constitutional and statutory provisions and the contract made in pursuance thereof for the building of the State Capitol, as showing that exactly three million acres of land, and no more, was intended to be conveyed to the contractor, and that the sale was by the acre and not in gross; and in not holding that said sale was one which contemplated a conveyance of a designated body of land supposed to contain three million acres of land as lands were then measured in the disposition of the public lands of Texas, with the usual inaccuracies; and in not holding that the expression "three million acres" was a mere matter of description. Where the deed describes the land conveyed by metes and bounds, or by reference to a map or plat, the mention of the quantity will usually be treated as a part of the description, and will not be given controlling effect. G. C. & S. F. Ry. Co. v. Richards, 11 Texas Civ. App., 95; Mann v. Pearson, 2 Johns., 37; Wuest v. Moehrig, 24 Civ. App., 124; Smith v. Evans, 6 Binney, 102; Morris Canal Co. v. Emmett, 9 Paige, 168; Kinney v. Consolidated Va. Mining Co., 14 Fed. Cases, 7827, 4th Sawyer, 382; Dalton v. Rust, 22 Texas, 133.

No case has been cited or found where an excess as small as 2 per cent of the land conveyed has been held to warrant the reformation of the deed or grant, where the sale was either in gross or by the acre. 9 Corpus Juris, 174; Veeder v. Fonda, 3 Paige Ch., 94; Winston v. Browning, 61 Ala., 83; Elliot v. Mitchell, 28 Texas, 106.

The Court of Civil Appeals erred in said judgment, opinions and ruling in not holding that if the contract between the State and Abner Taylor was for the conveyance of only three million acres of land, the land thus designated was a tract beginning at the northwest corner of the state and following the numerical order of the leagues to a point which would cover three million acres by accurate measurement; that within these boundaries the title of the patentee was perfect; and that nothing was conveyed in excess of the State's obligation, or the patentee's right until patents covering land beyond that point were executed; and in holding to the contrary; it being indisputably and conclusively shown by the record that the lands granted, after three million acres were patented, were no part of the lands in Schedule X held by your petitioners, but were lands held by persons not parties to the suit. Taylor v. Hall, 71 Texas, 213.

The Court of Civil Appeals erred in affirming the partition decree entered by the District Court, because there was no basis either in the pleadings or the evidence for such partition. McKee v. Welsh, 22 Texas, 390; Good v. Coombs, 28 Texas, 35; Moore v. Blagee, 91 Texas, 151; Sutter v. City, 36 Calif., 112; Hazen v. Webb, 65 Kansas, 38; Bigelow v. Littlefield, 52 Maine, 24; Barnes v. Lynch, 151 Mass., 510; Hanrick v. Gurley, 93 Texas, 458; Davis v. Agnew, 67 Texas, 206.

The Court of Civil Appeals erred in holding that the State, in seeking relief in equity on the ground of mutual mistake, was not under obligation to offer to do equity by giving the defendant an opportunity to pay for the excess in the quantity of land sold through mistake, but had a right to recover such excess in a partition suit, unless the defendant would first offer to do equity by tendering the price or value of the land in excess of the quantity intended to be conveyed, which holding was in conflict with the decisions of the Supreme Court, in O'Connell v. Duke, 29 Texas, 300, and Willoughby v. Long, 96 Texas, 194.

This holding reverses the principle of equity jurisprudence, which requires that the person seeking equitable relief shall offer either to do equity or to submit to an equitable decree, and not that the defendant against whom relief is sought is required to offer to do equity for which he seeks no relief of the court and who occupies a different position from the complainant. Newman v. Kay, 68 L. R. A., 908; Noel's Executors v. Gill, 84 Ky., 241; Wuest v. Moehrig, 24 Texas

Civ. App., 124; O'Connell v. Duke, 29 Texas, 300; Willoughby v. Long, 96 Texas, 194.

The Court of Civil Appeals erred in holding that your petitioners were, for the purpose of this suit, the Capitol Company, and therefore that the State had the same right against the land held by them as it would have had against Taylor, or the Capitol Company.

The Court of Civil Appeals erred in the order and judgment entered in favor of the Appellees on March 8, 1922, against your petitioners, for an additional excess of 4,192 acres, whereas the judgment of the District Court was only for 55,089 acres, in which judgment the Appellee acquiesced, which action on the part of the Court of Civil Appeals was not authorized by the statutes defining its powers, to-wit, Revised Statutes 1626, 1627, and is in conflict wth the decision of the Court of Civil Appeals in the case of Groos & Co. v. Brewster, 78 S. W., 359.

The Court of Civil Appeals erred in the judgment rendered March 8, 1922, and in the opinion then filed, in holding that your petitioners were required to submit to a partition of the lands described in Exhibit X, on account of and to the extent of the excess of 2,630 acres, in addition to the amount contained in the judgment of the District Court, being the quantity of land held to be in excess of the quantity called for in the patents to leagues 274, 275, 276, 336, 337, 338, 339, and in adding this quantity of excess to the judgment of the District Court. Grymes v. Sanders, 93 U. S., 55; Lawyers Ed., Book 33, Page 802.

The Court of Civil Appeals erred in the opinion and judgment rendered March 8, 1922, in treating as directory a valid provision mutually agreed upon and inserted in the contract between appellee and Abner Taylor, and in holding that the same was disregarded in a number of instances without objection, so far as the record showed, on the part of Abner Taylor, which holding was erroneous, but if correct did not warrant the conclusion deducted therefrom; and in not holding that said stipulation was valid, and that it was substantially complied with, and that it entitled Abner Taylor to receive titles to the surveys in their numerical order as the work progressed on certificates of the Building Commissioners; and in not holding that had there been no provision in the contract for conveying the surveys in numerical order, patents were nevertheless issued and delivered to Abner Taylor from time to time as the work progressed in numerical order, covering 90 per cent of the lands he was entitled to receive at such times on the certificate of the Building Commissioners, as provided in the contract; and that Abner Taylor thus acquired titles to the several parcels of land described in the patents, issued to him, in the order in which they were delivered to him, which patents only purported to convey to him 90 per cent of what he had earned,

and to which he was equitably entitled; and in not holding that thereafter the State ceased to have any interest whatever in the lands so equitably owned and conveyed to Abner Taylor; and in not holding that it was immaterial that Abner Taylor might have forfeited the title thus acquired by him if he had failed to complete the building of the State Capitol according to contract, for the simple reason that he did not fail to do so.

The Court of Civil Appeals erred in affirming the judgment of the District Court, and particularly in the opinion filed March 8, 1922, in treating as directory and not binding on the State the provisions of the contract which obligated the State to vest in Abner Taylor "the complete and perfect title" to the surveys in their numerical order up to three million acres on certificates of the Building Commissioners as the work progressed, and in holding that the patents issued and delivered to said Taylor, from time to time as the work progressed, on certificates of the Commissioners did not vest in him a valid title up to three million acres of land covered by the patents so issued, including all the excess therein; and in holding that the State of Texas might maintain this suit and obtain a partition of said lands on the ground that the State still retained an interest therein, notwithstanding the obligation imposed on the State by its contract with Abner Taylor to convey to him "the complete and perfect title" to the lands earned by him under said contract, with which he fully complied; the effect of which holding was to impair the contract between the State of Texas and Abner Taylor for the building of the State Capitol, contrary to Article 1, Sec. 10 of the Constitution of the United States, and Article 1, Section 16, of the Constitution of the State of Texas. 27 R. C. L., page 460, Sec. 172-173; 6 R. C. L., page 967, Sec. 431; Bartlett v. Bisby, 66 S. W., 70; Taylor v. Hall, 71 Texas, 213; Sullivan v. State, 207 U. S., 416.

*Maden, Truelove, Ryburn & Pipkin,* and *G. E. Hamilton,* for appellants John Lundergin et al.

*Veal & Lumpkin,* for appellants Lee Bevins et al.

*I. H. Burney* and *G. E. Hamilton,* for appellant Matador Land & Cattle Co.

*W. E. Keeling,* Attorney-General, *Jno. C. Wall,* Assistant, and *G. B. Smedley,* for defendant in error. (*C. M. Cureton,* Attorney-General, and *E. F. Smith* and *G. B. Smedley,* Assistants, for same in Court of Civil Appeals).

As to the defense of laches, it is settled that laches cannot be imputed to the State. The Supreme Court so held in the case of State v. Wofford, 90 Texas, 514, 520.

The trial court correctly concluded that the officers and representatives of the State were wholly without authority to convey or patent, in payment for the construction of the Capitol, any land in excess of three million acres. Constitution of 1876, Art. 16, Sec. 57; Secs. 10 and 11, Act of February 20, 1879, 8 Gammel's Laws, p. 1310; Secs. 4, 15, Act of April 18, 1879, 8 Gammel's Laws, p. 1414; Post v. State, 169 S. W., 401, 407; Koy v. Schneider, 218 S. W., 479, 480; Solon v. State, 114 S. W., 349, 355; Cooley's Constitutional Limitations, pp. 99, 389; 12 Corpus Juris, 751; State v. Williams, 20 S. C., 12; Thomas v. Owens, 4 Md., 189; State v. Holman, 58 Minn., 219, 59 N. W., 1006; Feibelman v. State, 98 Ind., 516.

Since, under the Constitution and the Acts of the Legislature, the officers of the State were wholly without authority to convey, in payment for the construction of the Capitol any land in excess of the three million acres, and since the contract for the conveyance of the lands, the negotiations between the parties leading up to the contract, and their acts with reference to the same, clearly show that the parties did not intend that any excess land should be conveyed, and that the quantity of the land was of the essence of the contract, and, since the parties did not intend that the State should run the risk of an excess of acreage in the lands to be conveyed, and the contractor in fact ran no risk of a shortage, the trial court correctly concluded that the State was entitled to relief on account of the mutual mistake of the parties as to the acreage within the bounds of the lands patented in payment for the Capitol, and to recover the excess acreage. Taylor v. Robinson, 72 Texas, 364; Taylor v. Hall, 71 Texas, 213; O'Connell v. Duke, 29 Texas, 300; Ladd v. Pleasants, 39 Texas, 415; Maxey v. O'Conner, 23 Texas, 234; G. H. & S. A. v. State, 81 Texas, 572, 603; Matador Land and Cattle Co. v. State, 54 S. W., 256; Willoughby v. Long, 96 Texas, 194, 199; Wright v. Gale, 104 Texas, 450, 455; Cox v. Barton, 212 S. W., 653; Sanborn v. Gunter, 84 Texas, 273, 299; Seaureau v. Frazer, 189 S. W., 1003.

The contract for the building of the Capitol itself, by its language and when read in the light of the Constitution and the statutes and the prior negotiations between the parties, clearly discloses the intention of the parties that the contractor should receive in payment for the Capitol but three million acres of land. The question as to the right of a vendor to recover excess is one depending, if not wholly at least primarily, upon the intention of the parties at the time the contract is made. The question is: Did the seller intend to hazard an excess? The matter is one of contract. Each case is peculiar to

itself and rests upon its own facts. O'Connell v. Duke, 29 Texas, 299, 310.

Since the Capitol Company was the real grantee of the lands patented in payment for the Capitol, and the trust estate is but a continuation of the Capitol Company in a changed form, the trial court correctly concluded that the excess lands to which plaintiff was entitled should be set apart to it out of the Capitol Leagues now remaining in the possession of the appellants. Campbell v. Campbell, 145 S. W., 638; New York Land, etc., Co. v. Hyland, 28 S. W., 206; Byrn v. Kless, 39 S. W., 980; Hanrick v. Gurley, 93 Texas, 459, 468; Peak v. Swindle, 68 Texas, 242; Moonshine v. Dunnam, 111 S. W., 161; Broom v. Pearson, 180 S. W., 895; Arnold v. Cauble, 49 Texas, 527; March v. Huyter, 50 Texas, 243; Beal's Heirs v. Johnson, 99 S. W., 1045.

The principle that the purchaser may be permitted in certain cases to retain the excess by paying for it, has application only to cases where the land has been sold at a certain price per acre. There was no such sale in this case. As held by this court in the case of Taylor v. Robinson (72 Texas, 364), construing the very contract in question here, "No money value or price was fixed to the lands. The land was as a fund to be passed to the contractor in payment upon the several stages toward the completion of the work."

Furthermore, in a suit of this character if the defendant desires to retain the excess he should in his pleadings offer to do equity and pay for it. Kenedy Pasture Co. v. State (231 S. W., 683, 694).

Not only was the Court of Civil Appeals authorized so to reform the judgment, but having reversed the trial court's judgment in part, it was made its duty by Article 1626 to render such judgment as the trial court should have rendered, it not being necessary that some matter of fact be ascertained. The fact that the judgment as thus reformed involves setting apart to defendant in error a greater quantity of land than was decreed by the trial court to be set apart to it, and the fact that defendant in error did not appeal from the trial court's judgment, made it none the less the duty of the Court of Civil Appeals to render such judgment as should have been rendered. We cite the following authorities: Art. 1626, R. S., 1911; Wortham v. Harrison, 8 Texas, 141; Pridgen v. Bonner, 28 Texas, 799; Broocks v. Masterson, 82 S. W., 822; Cummings v. Masterson, 93 S. W., 500; Markley v. Martin, 204 S. W., 123.

The allegations in paragraph IX of the petition are so drawn as clearly and explicitly to put the defendants on notice that the plaintiff is in the alternative seeking the recovery, under all the allegations in the petition relating to the excessive acreage in the leagues, of any tract of land sued for as a vacancy which the court finds is not a vacancy but a part of the adjoining leagues.

It is stated that defendant in error relies solely upon the position that the contract was a sale by the acre and that this contention is fundamental to its case. This is incorrect. We do contend that the sale was very clearly a sale by the acre. If it was, the excess, however small it may have been, may be recovered. It is true, however, that under the authorities in this State even in a sale in gross if the parties did not intend to hazard the amount of excess or the amount of deficiency involved, equity will grant relief. So in this case, even if the sale could be construed as one in gross, or of several tracts of land, equity will grant relief and the recovery of the excess for the reason that it very clearly appears that the parties did not intend to hazard either an excess or a deficiency.

MR. JUSTICE PIERSON delivered the opinion of the Court.

This case is elaborately set out in the able opinion of Mr. Justice Jenkins of the Court of Civil Appeals, and is fully discussed therein. Findlay et al. v. State, 238 S. W., 956. We will limit our discussion to those considerations and issues that essentially control the case.

A comprehensive statement of the facts of the case is of controlling importance, and in order that our holdings may be clearly understood we quote the following from the opinion of the Court of Civil Appeals:

"The state of Texas brought suit No. 36183, in the district court against George Findlay, Francis C. Farwell, and Hobart C. Chatfield-Taylor, to recover an alleged excess in a great number of surveys in a number of counties in the Panhandle of Texas, which were patented to Abner Taylor, in payment for the building of the present state capitol. The allegation in this regard is that by mutual mistake excesses were included in said surveys aggregating 55,116 acres, and that the State is the owner of an undivided interest in the entire tract to the extent of said excess, and entitled to possession of same; that Taylor and his assignees have conveyed a large portion of said land, but that the said Findlay, Farwell, and Chatfield-Taylor still hold the legal title to about 600,000 acres of same as trustees, out of which the State seeks to have the portion to which it is entitled set apart to it. Numerous issues of law are raised by the pleadings. The State also brought two separate suits against some of the appellants herein, to recover alleged vacancies between certain of the capitol league surveys. All of those suits were consolidated, and tried before the court without a jury, with the result that judgment was rendered for the State, both upon the issue of title involved in the first suit and upon the issue of boundary involved in the other suits. All of the defendants have appealed.

"We think it will avoid confusion, if we treat the issue of title involved in the partition suit and that of boundary in the other suits separately.

"The court filed its findings of fact, which we think, for the most part at least, are sustained by the evidence. They cover 5 pages, which are not unduly long, in view of the fact that the statement of facts, besides the numerous maps, covers 1,194 pages. However, with the view of stating them in their logical order, we make, as to the partition suit, the following

"Findings of Fact.

"(1) The Constitution of 1876 contained the following clause:

"'Three million acres of the public domain are hereby appropriated and set apart for the purpose of erecting a new state capitol and other necessary public buildings at the seat of government, said lands to be sold under the direction of the Legislature; and the Legislature shall pass suitable laws to carry this section into effect.' Art. 16, sec. 57.

"(2) In obedience to this command of the Constitution, the Legislature, on February 20, 1879 (Gammel's Laws, vol. 8, pp. 1309, 1310), passed an act which set apart for the purpose of erecting the capitol all of the vacant land in a number of counties in the Panhandle of Texas; created a board to have the same surveyed into league surveys to the amount of 3,050,000 acres, not to include in such surveys any land not fit for agriculture or grazing purposes, after which the remaining lands in said counties should cease to be subject to the reservation created by the act. The 50,000 acres were to be sold, one-half of the proceeds to go to the school fund, and the other half to the payment of expenses in surveying the land.

"(3) On April 18, 1879 (Gammel's Laws, vol. 8, pp. 1412, 1414), the Legislature passed an act creating a board of commissioners, to let the contract to build the capitol, to the bidder who would agree to build the same 'for the smallest amount of the said public domain so set aside' for building the capitol, and appropriating the 3,000,000 acres to be surveyed, or so much thereof as might be necessary to that purpose.

"(4) On June 28, 1879, the Capitol Commissioners made a contract with J. T. Munson to survey in league surveys 3,050,000 acres of land in said reservation.

"(5) On January 28, 1881, the Commissioner appointed to supervise the surveying, reported that the same had been completed, showing in detail what lands had been surveyed, and that the field notes had been returned to the Land Office.

"(6) The Commissioners advertised for bids for building the capitol. On December 31, 1881, Mattheas Schnell submitted a proposition 'to build the New Capitol Building, according to plans and

specifications, for 3,000,000 acres of land, as designated in your notice to contractors, dated July 1, 1881.' This bid was accepted by the Commissioners, January 10, 1882.

"(7) The contract provided that the contractor should receive title to the lands as the work progressed, beginning with league No. 1, and taken in numerical order.

"(8) On January 31, 1882, Schnell assigned three-fourths of his contract to C. B. Farwell, John V. Farwell, Abner Taylor, and A. C. Babcock, and on May 9th the remainder of said contract was assigned to said parties by Schnell. On June 30, 1882, Babcock and the Farwells assigned their interest in the contract to Abner Taylor.

"(9) The state accepted Taylor as the contractor instead of Schnell, and the Farwells and Babcock signed his bond as securities, for the faithful performance of said contract.

"(10) On April 16, 1888, the Capitol Board adopted a resolution to the effect that, whereas, the Commissioner of the Land Office had reported that errors had been discovered in the survey of the capitol reserve lands, and that by agreement with the contractor a partial resurvey had been made by W. S. Mabry, from which it appeared that about 16,000 acres of said survey were in New Mexico, and that excess in some of the league surveys had been discovered sufficient to make up for the land lost by reason of the conflict with New Mexico, therefore the corrected field notes as made by Mabry were adopted; that the excess discovered in some of the leagues had been taken out, and the said leagues had been reduced to their proper size, and the excess from same placed in new league surveys, numbered 333½, 345½, and 357½, to be awarded to the contractor in lieu of the lands in New Mexico; and that the supplemental contract of January 11, 1887, with reference to this matter, was ratified.

"(11) Certificates were issued to the contractor from time to time, as the work progressed, showing that he had earned, and was entitled to have patented the number of acres mentioned in such certificates, beginning with Survey No. 1. Prior to June 1, 1885, such certificates had been issued, aggregating 199,260 acres. Other certificates were issued from time to time amounting in the aggregate to 3,000,000 acres. Patents were issued to Taylor for this amount of land.

"(12) On August 25, 1888, the Capitol Commissioners certified that the capitol had been completed according to contract.

"(13) On or about June 1, 1885, Abner Taylor contracted to convey all of the lands earned and to be earned by him under his contract to the Capitol Freehold Land & Investment Company, Limited, then in process of organization in Great Britain, in consideration of stocks and debentures of said company.

"(14) In compliance with said contract, Taylor, joined by C. B. and J. V. Farwell, conveyed said lands to trustees. who were author-

ized to sell any or all of said lands to pay the debentures issued by said company, and thereafter to convey the remainer to said company. Prior to this Babcock had conveyed his interest to the Farwells.

"(15) Said original trustees conveyed portions of said land to various parties, and, after paying off said debentures, conveyed the remainder of said lands to the said company, hereinafter referred to as the Capitol Company.

"(16) The Capitol Company sold to various parties portions of said land, and, on June 4, 1915, conveyed the remainder thereof to George Findlay, Francis C. Farwell, and Hobart C. Chatfield-Taylor, appellants, in trust for the purpose of selling said lands and liquidating the affairs of said corporation, then in process of dissolution, and which has been dissolved as provided by the laws of Great Britain. But said trustees are still in possession of the unsold portion of said lands, amounting to about 600,000 acres, being the land described in Schedule X of appellees' petition.

"(17) There is an excess in the lands patented to Taylor of 55,089 acres, arising from the fact that many of said surveys, as found to exist upon the ground, contain excesses. These excesses are not confined to any one survey, or to any one county, but exist with tolerable uniformity throughout all of the surveys.

"(18) It was the purpose of the State to convey, and of the contractor to receive, full 3,000,000 acres of land for constructing the state capitol, and no more. Both the state and the contractor believed, when the patents were issued, that such patents conveyed the number of acres called for therein, and no more. That said patents do in fact contain more land than is shown upon their faces, arising from a mutual mistake on the part of both parties to the contract.

"(19) The State, by bringing this suit, and by the allegations in its petition, has elected to ratify the sales of the portions of said lands which have been sold, as set forth in the foregoing findings of fact, and to claim its undivided interest in the lands now held by the trustees, Findlay et al.

"(20) The lands now in the possession of the trustees are more than sufficient to satisfy the claim of the State to the excess, if any, to which it is entitled, and are susceptible of an equitable partition being made of the same between the State and said trustees."

The Court of Civil Appeals in its opinion on rehearing held that there were no vacancies; that it was intended that the surveys should join, and that the land sued for by the State as vacancies is only excess and should be added to the other excess found and judgment rendered against plaintiffs in error therefor, thus making the total excess 59,281 acres.

At the outset, the issue first to be determined is the identity of parties, i. e., the privity of estate between Abner Taylor and plaintiffs in error to all the leagues of land, and that plaintiffs in error are privy in interest and title thereto with Taylor. The trial court and the Court of Civil Appeals found as a fact, from the testimony, that Abner Taylor received all the leagues from the State under his contract, for the benefit and ownership of the Capitol Freehold Land & Investment Company, Ltd.; that the lands were conveyed by Abner Taylor to trustees of said company; that as the lands were sold the debentures were paid off, and thereafter the land remaining was conveyed to said company; that said company succeeded to all rights of Taylor therein, by virtue of the contract, and performance thereof, between Taylor and said Capitol Company; that the plaintiffs in error are the legal representatives of the company, and that said Capitol Company received all the lands conveyed by the State for building the capitol, and that it and the said plaintiffs in error stand in the position of Abner Taylor himself regarding all of said leagues.

These findings are supported and confirmed by the findings of fact of the Court of Civil Appeals. Indeed, it is not contended by plaintiffs in error that these findings of fact have no evidence to support them. Such findings supported by evidence are conclusive upon this court. The fact that the Capitol Company was created for the purpose of acquiring these lands, and through a series of years of selling them, and the fact that some of its original stockholders are dead, and there have been changes in the ownership of its stock, can not affects its legal status in relation to the excess contained and its restoration through partition. (Findlay v. State, supra, pp. 962, 963).

In support of their claim of right to keep the excess, plaintiffs in error assert that the State contracted to give Abner Taylor for building the capitol building all the leagues of land surveyed, as a ''whole tract'', and that, therefore, he became entitled to all the acres contained therein; and they assert, further that if the contract was limited to 3,000,000 acres, and they are not entitled to retain the excess as a matter of right, then, and in that event, they are entitled to keep the excess contained in all the leagues, the whole tract, by paying for it at the value per acre at the date of the contract. The facts and the contract itself dispose of these contentions against plaintiffs in error.

There was other unappropriated land besides these leagues,—much more vacant State land. It is not that the State had a tract of land thought to contain 3,000,000 acres, but that out of its public domain it contracted to convey 3,000,000 acres. The State merely undertook to measure off from the general body of its land 3,000,000 acres. Three million acres was the subject of contract between the parties

for building the State House. In measuring the 3,000,000 acres mistakes aggregating 59,281 acres were made; but the contracting parties were dealing with the leagues surveyed as containing only 3,000,000 acres.

The Constitution set aside 3,000,000 acres for the purpose of building a new State Capitol. Art. 16, Sec. 57. This was a limitation upon the authority of the Legislature to grant more than 3,000,000 acres of the public domain for the purpose of erecting a new State Capitol, and upon those acting under such authority from giving or receiving more than that stipulated amount. The Legislature provided for conveying 3,000,000 acres, or so much thereof as might be necessary for that purpose. The parties contracted for 3,000,000 acres for building the capitol. The parties while in the performance of the contract construed it to mean 3,000,000 acres, no more and no less, and had a *shortage* corrected based upon that construction. The State showed a readiness to make good a deficiency of acreage to the amount of 16,000 acres, due to mistake of the surveyor in running over into New Mexico, and did make good the shortage, out of excess discovered in some of the leagues, and the parties to the contract reiterated their intention that 3,000,000 acres should be conveyed, and by supplemental contract stipulated that it was intended that no more than 3,000,000 acres should be conveyed. (Findley v. State, supra, p. 961). Thus the parties themselves construed the contract. The conveyance was for 3,000,000 acres, and now an excess being developed, the State is entitled to recover same through partition.

Plaintiffs in error insist that Abner Taylor and the Capitol Company acquired under the contract "*complete and perfect title*" to the *first* 3,000,000 acres patented down to what they term the 3,000,000 line, beginning, according to the contract, with League No. 1.; that the State upon delivering patents to Taylor to leagues and to land up to 3,000,000 acres *including* excess thereby ceased to have any interest in such lands whatsoever, the title being absolute under the contract; and therefore the State can not maintain its suit for any excess land so included; that if it has any remedy at all, it must be applied to those lands and leagues patented to Taylor after said three million mark, including excess, had been reached; that upon any theory the contract by express direction covenanted to give perfect title to all of the northern and middle parcels of the general tract, those parcels admittedly not containing 3,000,000 acres; and, therefore, that the excess accrued in the third or south parcel of the general tract, and that the State must recover its excess, if it recovers any, from said last parcel below the 3,000,000 acres first conveyed. (The land now owned and held by plaintiffs in error, and out of which partition is sought by the State, lies in the northern

and middle parcels, and is not contained in the said last or south parcel).

This is a severely strained theory at best. It is true that Abner Taylor under the contract was to receive title to the land as the work progressed, beginning with League No. 1 on the north border of the State, and that they should be taken in numerical order. But this selfsame contract contemplated that all the leagues, containing 3,000,000 acres, should be so taken when earned. It was mutually thought by the parties that all the leagues contained 3,000,000 acres, and that they contained only 3,000,000. Thus Abner Taylor became entitled to have patented to him all the leagues as containing 3,000,000 acres, and this was done. But these leagues actually contained more than 3,000,000, in the substantial amount of 59,281 acres. The mistake of acreage applied to all the leagues, and the excess was scattered through them all.

Upon the completion of the building, Taylor had the right to have all the leagues conveyed to him. In doing this he was receiving what was stipulated in his contract as 3,000,000 acres. The issuing of the patent to the last league was just as much a performance of the contract as was the issuance of the patent to the first one. And yet he received too much land. The mistake in the acreage of the first league patented was as much a part of the total excess as that in the last league. We must view the performance of the contract as a whole. But this does not alter the fact that the contract was limited to 3,000,000.

All the leagues having been patented to Abner Taylor for the benefit of the Capitol Company, and plaintiffs in error as its representatives having come into possession of and received all the leagues, with the excess, they are chargeable with the excess contained in all the leagues.

Plaintiffs in error follow their argument upon this theory with the statement that, "When the State made its resurvey and brought suit, none of the original tract was held either by the original patentee or his descendants. All that was embraced in the Capitol Reservation had been conveyed to many grantees, and was the subject of many individual ownerships. The defendants in the suit owned a part of it, but they neither owned, nor had ever owned, any of the land below the 3,000,000-acre line. Their land was entirely within that which was concededly embraced within the 3,000,000 acres which the State was expressly obligated to convey and to which it covenanted to give 'complete and perfect title'."

There can be no difference of opinion as to the correctness of the proposition of plaintiffs in error that, "There is no right to partition where there is no common ownership. There can be no partition of a tract of land where the parcels making up the tract are separately

owned. The object of partition is to put an end to a common ownership. . . . Partition is applicable only to a common ownership where each has a partial title to every part of the land. It, therefore, has no application to a case where the separate parcels are separately owned.''

If the premise of plaintiffs in error were true, this would be persuasive. But the facts are, as concluded by the findings of fact of the trial court and the Court of Civil Appeals, that plaintiffs in error are in legal effect the Capitol Company, for whom Abner Taylor received patents to all the leagues, and thus they received patents to all the leagues and came into possession of all the land patented. Plaintiffs in error make no contention that there is no evidence to support the findings of fact in this respect by the trial court and the Court of Civil Appeals. They conveyed this very land below what they term the ''3,000,000 acre line'' to their vendees.

The Capitol Company having received the excess, and as they still have it through their representatives, plaintiffs in error, it violated no principle of equity, but is in accord with the principles of right and justice, for the State to have partition against it for the excess out of land still in its hands, and not disturb those parties to whom it has sold parts of the land.

Where parties are joint owners of several tracts of land, and one of them sells off some of them, the court would be authorized to partition to him such parts so sold, if it could be equitably done, and thus protect his vendees in their title and possession; or, as stated in the syllabus to New York & T. Land Co., Ltd. v. Hyland et al., 8 Texas Civ. App., 601, 28 S. W., 206, ''Where one tenant in common conveys a certain portion of the common property by description, the other may, by ratifying the sale, charge the former with the proceeds of the sale, and, without making the vendees parties to the action, sue for a partition of the remainder.''

Certainly the co-tenant so conveying could not be heard to complain. This is so clearly equitable and right, and is so well settled in law, that it is unnecessary to do more than state it. Campbell v. Campbell, 145 S. W., 638; Byrn et al. v. Kelas, 15 Texas Civ. App., 205, 39 S. W., 980; Moonshine Co. et al. v. Dunman et al., 51 S. W., 159, 111 S. W., 161; Hanrick v. Gurley, 93 Texas, 458; Peak v. Swindle, 68 Texas, 242, 4 S. W., 478; Arnold v. Cauble, 49 Texas, 527; March v. Huyter, 50 Texas, 243; Beale's Heirs v. Johnson, 45 Texas Civ. App., 119, 99 S. W., 1045; Broom v. Pearson, 180 S. W., 895.

In the case of Peak v. Swindle, supra, the application of this rule in that case was expressed by Justice Stayton in the following language:

"The general rule, that a sale by one tenant in common of a distinct part of a larger tract of land will be protected, and the part so sold set apart to the vendor when it does not exceed the share to which the co-tenant vendor was entitled, ought to be enforced in this case, if under the general rules applicable to such cases this can be done without prejudice to other persons. This is the only manner in which the equities existing between the parties can be fairly adjusted."

It is equitable and right that the various persons who have, in good faith, purchased from the Company, be protected in their purchases.

To entitle plaintiffs in error to the right to purchase the excess under their contract with the State, it would be necessary to find that their contract was for a "whole tract" as such, rather than for a specific number of acres out of the public domain. This the record does not support.

The essential difference in the purchase or acquisition of land in this case by plaintiffs in error and that shown in the case of Willoughby v. Long, 96 Texas, 194, 71 S. W., 545, is that in the latter case the vendee sought to buy and contracted to buy a certain section of land, Sec. No. 23, the sale being the entire section at so much per acre; while in this case the contract for the acquisition of the land was for a certain specific number of acres, and not by the league or for a number of leagues, nor for a group of leagues as embracing a whole tract.

There was a lack of contractual obligation on the part of the State to sell and convey to Abner Taylor any excess. The extent of its obligation was to convey 3,000,000 acres. This it performed, and the fact that mistakes were made in surveying out the 3,000,000 acres, involving many thousand acres in excess of the amount contracted for, does not add to the contractual rights of plaintiffs in error.

The ruling in Willoughby v. Long was based upon the intention of the parties, "that the intention was to purchase the whole survey, and that the sale was a sale of the entire tract." Page 197.

Here, it is clear, we think, the contract for the building of the capitol building was not that the builder should take the group of leagues as an entire tract, regardless of whether they contained 3,000,000 acres, but that he was to receive 3,000,000. As shown, this was the construction put upon the contract by the parties.

Abner Taylor and his successors did not accept the leagues as 3,000,000 acres more or less, in consideration for their contract to build the capitol, but accepted them as 3,000,000 acres, and when they discovered that some of them were in New Mexico, they demanded their equivalent in Texas, and as such equivalent accepted excess discovered in surveys already included in the contract. There is no

obligation on the part of the State to sell to them any excess, or any other land beyond the 3,000,000 acres, at any price.

If Abner Taylor and the plaintiffs in error acquired the right to have the State convey to them all the leagues (nearly 700) of land as an entirety, regardless of acreage, for building the capitol, though 3,000,000 acres was the stipulated consideration, then if a substantial excess was developed, the plaintiffs in error would be entitled to retain same by paying for it at its value as controlled by the contract as contended by plaintiffs in error. But, as shown, this is not supported in the findings of fact, nor in the proper construction of the contract.

There was no stipulated price per acre, but a specified number of acres was given for building the capitol. Since there was no contractual obligation, and there being no stipulated price per acre, and its value being undetermined, the sale being for the specific acreage, and plaintiffs in error having received 59,281 acres more than was contracted for, they neither have the right to hold same, nor to retain it by paying for it, and partition was properly applied.

It is well settled under the authority of Revised Statutes, Article 1626, and the cases of Wortham v. Harrison, 8 Texas, 141; Pridgen v. Bonner, 28 Texas, 799; Broocks v. Masterson, 82 S. W., 822; Cummings v. Masterson, 42 Texas Civ. App., 549, 93 S. W., 500 (writ of error denied); Markley v. Martin, 204 S. W., 123 (writ of error denied), that the Court of Civil Appeals had authority, and it was its duty, to render proper judgment as to the excess contained in the so-called "vacancies", there being no issue of fact involved.

One, reading the reports of the building of the capitol, can not fail to be impressed with the high integrity, fairness, and ability of Abner Taylor, and his desire to give to Texas a State House of which the State would be proud. It is clearly evident that he used every effort possible, and did in good faith build a magnificent capitol building according to his contract. The correspondence between him and the Building Commissioners, and the various reports as the building progressed, fully substantiate this.

In this connection, we will make mention of a fortunate circumstance that at first was apparently embarassing to the contractor, Mr. Taylor, but redounded at last to the satisfaction of all. It was discovered that the white limestone out of which the capitol building was to have been built under the original contract was not to be found in quantities sufficient for the great structure. After much negotiation, the contract was changed, and Texas red granite, from Burnet County, was substituted for the white limestone. This entailed a large additional cost to the builder, but was partly compensated for by the State in three different ways: (1) The State agreed to furnish Mr. Taylor 500 State convicts for a period of two years, to be

used in building fifteen miles of railroad from Burnet to Roseville, the granite quarries, and in working the granite quarries and the limestone quarries; (2) it agreed to give Mr. Taylor immediate possession of all the 3,000,000 acres of land without charge; (3) changes were made in the plans and specifications which reduced the cost of construction.

While it is true that the contractor faithfully performed his contract, and built for Texas a structure worthy of the greatness of the State, the State in turn delivered to the contractor a great domain, as it were, of land, larger in area than several of the States of the Union, and of great value. Each of the parties treated the other right, and as far as the general equities are concerned, they are, as far as can be ascertained, about equal. The State performed its contract in full, and passed "complete and perfect title" to the contractor to 3,000,000 acres of well chosen selected land. Since through mistake of the parties the State actually conveyed to the contractor practically 60,000 acres more than the 3,000,000 acres, it is not inequitable for the State to recover back from him and plaintiffs in error this excess, and thus leave both parties in the same position as they would have occupied had only the 3,000,000 acres been conveyed.

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*

Chief Justice Cureton took no part in the decision of this case.