**OLVEY et al. v. JONES et al.**

No. 5388.

Court of Civil Appeals of Texas. Texarkana.

Dec. 2, 1939.

Rehearing Denied Dec. 14, 1939.

846

Saye & Saye, of Longview, for appellants.

W. B. Chauncey, of Wichita Falls, and Bramlette & Levy, of Longview, for appellees.

JOHNSON, Chief Justice.

Mrs. Minnie Jones and the heirs of her deceased husband, G. H. Jones, were plaintiffs and J. W. Olvey, Gladys Olvey Sample, and Clark Sample were defendants in the trial court. The suit is an action in trespass to try title and to reform a mineral deed previously executed by plaintiffs to defendant Olvey, and for recovery of certain oil royalty collected by defendants under the contract. Trial to a jury resulted in a verdict and judgment for plaintiffs. On a former appeal to this court the cause was reversed and remanded upon the ground that plaintiffs' pleadings did not authorize all the relief awarded in that judgment. Olvey et al. v. Jones et al., Tex.Civ.App., 95 S.W.2d 980. After the case was reversed and remanded plaintiffs filed their third amended original petition conforming to the matters pointed out by this court. Sufficient of the terms of the mineral deed sought to be reformed are copied in the opinion above referred to and it will not be necessary to repeat them here. The grounds alleged upon which and the particular in which the mineral deed is sought to be reformed are, in substance, that the actual trade, agreement and intention of the parties was that the vendors sold and the vendee purchased, by the acre, an undivided interest of $27\frac{1}{2}$ full royalty acres in the tract of land described in the deed, for a consideration of $100 per acre; that through mutual mistake of the parties, in believing that the tract of land described contained only 55 acres, when in fact it contained 83.23 acres, they erroneously described in the deed said interest so purchased and intended to be conveyed as an undivided "one-half" interest in the tract of land described, thus causing the deed to convey an undivided interest of 41.615 full royalty acres instead of the undivided interest of $27\frac{1}{2}$ full royalty acres purchased and intended to be conveyed; that an undivided "27.50/83.23" interest in the tract of land correctly describes the interest purchased and intended to be conveyed. Plaintiff prays that the instrument be reformed so as to effect the actual purchase, sale and conveyance mutually intended, by inserting the figures "27.50/83.23" in lieu of the words and figures "one-half ($\frac{1}{2}$)" in each of the plac-

es in the instrument where such words and figures "one-half (½)" appear.

Plaintiffs further allege that great quantities of oil have been and are being produced from said 83.23 acres of land and that by reason of the facts above stated defendants have been paid and have received from the leaseholders as royalty large sums of money to which plaintiffs were entitled; that the amount so wrongfully paid to and received by defendants to which plaintiffs were and are entitled is the sum of $5,449.98, for which they also ask judgment against defendants.

Defendants' answer contains a general demurrer, special exceptions, general denial, plea of not guilty, and an affirmative plea alleging that the plaintiffs had, by their acts after knowledge of the alleged mistake, ratified the mineral deed as originally written and are now estopped to seek its reformation.

The cause was again tried to a jury and submitted upon special issues. The issues submitted, and the jury's answers thereto, are as follows:

"Special Issue No. 1: Find, from a preponderance of the evidence how many acres the grantors in the mineral deed in question and the Grantee J. W. Olvey believed were in the tract of land in question at the time the contract and mineral deed were signed by the parties. Answer by giving the number of acres."

Answer: "55 acres."

"Special Issue No. 2: Do you find from a preponderance of the evidence that the grantors in said mineral deed sold the minerals in question and that the grantee J. W. Olvey purchased the minerals in question on a per acre basis? Answer 'Yes' or 'No.'"

Answer: "Yes."

"Special Issue No. 3: Do you find from a preponderance of the evidence that the grantors in said mineral deed in question intended to sell and that the grantee J. W. Olvey intended to buy one-half (½) of the minerals under said tract of land for a consideration of Two Thousand, Seven Hundred and Fifty ($2750.00) Dollars regardless of the number of acres contained in the tract? Answer 'Yes' or 'No.'"

Answer: "No."

"Special Issue No. 4: Do you find from a preponderance of the evidence that the grantors in said mineral deed intended to sell and that the grantee J. W. Olvey intended to buy all of the oil, gas and other mineral rights in and under an undivided interest of 27½ acres under the tract of land in question subject to the terms and conditions of the oil and gas leases made to B. A. Skipper and Clark Sample? Answer 'Yes' or 'No.'"

Answer: "Yes."

"Special Issue No. 5: Do you find from a preponderance of the evidence that the plaintiff Mrs. Minnie Jones intended at the time she signed the division order to the Stanolind Crude Oil Purchasing Company on September 27, 1935, to ratify the mineral deed in question to J. W. Olvey regardless of the fact that the tract of land contained 83.23 acres? Answer 'Yes' or 'No.'"

Answer: "No."

"Special Issue No. 6: Do you find from a preponderance of the evidence that the grantors in said mineral deed, other than Mrs. Minnie Jones, knew on September 27, 1935, that the plaintiff Mrs. Minnie Jones signed the division order dated September 27, 1935 to the Stanolind Crude Oil Purchasing Company? Answer 'Yes' or 'No.'"

Answer: "No."

Upon the verdict of the jury and findings of the court based upon undisputed evidence, judgment was entered for plaintiffs reforming the instrument as prayed for and awarding plaintiffs recovery of defendants in the sum of $5,449.98. Defendants have appealed.

Appellants' first proposition complains of the action of the trial court in overruling defendants' general demurrer to the second count (being the count alleging the facts upon which reformation of the deed is sought) in plaintiffs' third amended original petition because, it is contended, the facts alleged fail to state a cause of action in equity authorizing the relief of reformation, in that the facts alleged show that the deed was executed pursuant to a written contract of sale, by the terms of which defendant Olvey purchased and plaintiffs sold and became obligated to convey an undivided "one-half" interest in the tract of land described. The proposition is not sustained. The petition alleges that said written contract of sale was executed under like mutual mistake as was the deed in the description of the undivided interest purchased and sold. The following excerpts from the petition are sufficient to show that plaintiffs pleaded that the alleged mutual mistake was present at the

time of executing the sales contract, as well as at the time of executing the deed:

"* * * that the plaintiffs actually sold and the defendant actually bought an undivided interest of twenty-seven and one-half (27½) acres in and to the oil, gas and other minerals in and under said 83.23 acres of land first hereinabove described, and it was intended by the plaintiffs and the defendant, J. W. Olvey, that plaintiffs should convey and assign to the said J. W. Olvey, an undivided interest of twenty-seven and one-half acres in and to the oil, gas and other minerals in and under said 83.23 acre tract of land hereinabove described, as well as transfer, convey and assign unto said defendant, J. W. Olvey, an undivided interest of twenty-seven and one-half acres of all of the oil royalty, gas rental, or royalty due and to be paid under the terms of an oil, gas and mineral lease theretofore executed in favor of B. A. Skipper and Clark Sample, insofar, and insofar only, as said oil, gas and mineral lease affected an undivided interest of twenty-seven and one-half acres of the tract hereinabove described; and it was also intended and agreed that of all of the money rental which may be paid to extend the term within which a well may be begun under the terms of said lease insofar, and insofar only, as said lease affected an undivided interest of twenty-seven and one-half acres of said tract, should be paid to said grantee, J. W. Olvey; and it was also intended and agreed that in the event said oil and gas lease became cancelled or forfeited, then and in that event, an undivided interest of twenty-seven and one-half acres of the lease interest and all future rentals on, said tract of land, for oil, gas and other minerals privileges, should be owned by said grantee, J. W. Olvey, owning all of all oil, gas and other minerals in and under an undivided interest of twenty-seven and one-half acres of said tract of land, together with the same interest in all future rents due and to be paid on said undivided twenty-seven and one-half acre interest of said tract.

"The plaintiffs and grantors in said contract and deed and the defendant, J. W. Olvey, *at the time of the execution of said contract of sale; and at the time of the execution and delivery* of said mineral deed hereinabove referred to, all believing that said tract of land described in said contract of sale and said mineral deed, contained only 55 acres, and not having reason to know or discover, nor having information to put an inquiry that there was actually 83.23 acres, they delivered to defendant, J. W. Olvey, said mineral deed. * * *

"The plaintiffs further represent that *the mistake which* caused the plaintiffs to *purportedly contract to convey,* and *to purportedly convey more* than an undivided interest of 27½ royalty acres to the defendant, J. W. Olvey, Grantee in said deed, and to purportedly transfer, assign and convey under said mineral deed one-half of the oil royalty, gas rental and royalty due and to be paid under the terms of said oil and gas lease, and to purportedly transfer and assign to said J. W. Olvey one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease, and to purportedly grant and convey unto the said grantee, J. W. Olvey, one-half of the lease interest and all future rentals on said land for oil, gas and other minerals privileges, in the event said lease became forfeited or cancelled, in and under more than an undivided interest of 27½ acres of the 83.23 acre tract, *was a mutual mistake, and was made prior and at the time of the execution of said written contract and mineral deed, and at the time that said consideration was paid.*" (Italics ours).

■ The petition as a whole is sufficient to authorize the relief prayed for and granted in reforming the deed so as to effectuate the actual purchase and sale between the parties. Barclay v. Falvey, Tex.Civ.App., 100 S.W.2d 791; Findlay v. State, 113 Tex. 30, 250 S.W. 651.

■ Appellants' second proposition complains of the action of the trial court in refusing their motion for a directed verdict because plaintiffs did not allege and did not prove that the phrase "and includes any excess, if any," following the description of the land in the contract of sale and in the deed was inserted by mutual mistake of the parties. In the written contract of sale as well as in the deed the metes and bounds description of the land is followed by the phrase "containing 55 acres of land, more or less." That phrase is followed by further identification of the land described by reference to certain deeds and records, and concludes with the phrase "and includes any excess, if any." Plaintiffs did not plead or prove that the phrase "and includes any excess, if any," was

inserted in the deed by mutual mistake of the parties. We do not agree with the contention that such pleading and proof was essential to plaintiffs' case. The construction most favorable to appellants that can be given the phrase is, that by its use the grant is made to apply to all of the tract of land described in the deed, regardless of whether it contained "fifty-five" acres or an amount greatly in excess thereof. Assuming, without affirming, that such is its correct meaning, the reformation asked by appellees does not tend to annul, alter or affect the phrase. Appellees do not seek to have the grant apply to any area less than *all* of the land described in the deed. They ask only to correct the alleged erroneous description of the proportionate, or amount of undivided interest actually and admittedly granted in *all* the land described in the deed. The deed as reformed by the judgment of the court below applies the grant to all the land and, except as to the description of the undivided interest granted, it retains all its original language, including the phrase in question, unaffected.

■ In the third proposition appellants complain of the action of the trial court in overruling their motion for directed verdict because, it is contended, the undisputed evidence shows that appellees acquiesced in, ratified, and confirmed the deed after discovering the mistake therein, by executing certain division orders for the distribution of royalty payments by the lessees operating the leasehold interest. The deed is dated January 19, 1931. There was introduced in evidence a division order executed by appellees Yount-Lee Oil Company of July 26, 1931. Appellees testify that the mistake in the deed was not discovered until long after execution of this division order. The present suit was filed in October 1934. On September 27, 1935, appellee Mrs. Minnie Jones for herself and purporting to act for the other appellees, her children, under a power of attorney authorizing her to receive their part of the royalty, signed a division order to Stanolind Crude Oil Purchasing Company. Mrs. Jones testified that she signed the division order so she could collect the one-half of the royalty not in dispute. That she could not collect it without signing the division order. That she notified the oil company and had payment stopped on that part of the royalty in dispute and that she did not in signing the division order intend to ratify the deed. We think the issue of alleged ratification was sufficiently disputed in the testimony to make a jury question. There was no error committed by the trial court in refusing to direct a verdict in favor of appellants on that account.

■ Appellants' fourth proposition alleges that the trial court erred in overruling their motion for a directed verdict, because, it is contended, the judgment so reforming the deed as to reduce the undivided interest conveyed from a one-half to 27.50/83.23 is without support in the pleadings and in the proof, in that the pleadings and proof show that the agreement between plaintiffs and Olvey was that plaintiffs contracted to sell Olvey an undivided "one-half" interest in the land. We think the excerpts which we have above quoted from the petition are sufficient to show that the real purchase and sale between the parties was an undivided interest of 27½ acres in the land, which is the same as an undivided 27.50/83.23 interest described in the judgment reforming the deed. We are also of the opinion that the testimony raises the issue pleaded, that Olvey actually purchased and plaintiffs actually sold an undivided interest of 27½ acres for $100 base in the land described in the deed. Vernon Jones, one of the plaintiffs, who acted as an agent or spokesman for the other plaintiffs in making the sale, testified in part as follows:

"The Witness: We told Mr. Olvey we would take $100.00 per acre for one-half the leasehold and he says, 'I will give you $100.00 per acre for the lease provided you will sell the royalty on the same basis, $100.00 per acre.'

"Q. How many acres? A. One-half of 55 acres, 27½ royalty acres.

"Q. Well, what was done? A. Well, right at that time we couldn't close the trade with him because Hoyler (Jones) and myself were kinda acting agents for the other children.

"Q. Did you say anything to Mr. Olvey and Mr. Sample about having to take it up with the other members of the family? A. I told them we would have to see the other members of the family and see if agreeable if we would sell it at that price and it would be the next morning before we could let him know.

"Q. Did you see the rest of the members of the family? A. Yes, sir, contacted them

all that evening and that night and went back to the hotel the next morning to see Mr. Olvey.

"Q. What did you tell him the next morning? A. We told him we wouldn't take $100.00 an acre for the lease because we had been offered $3,000.00.

"Q. What did he say? A. He said, 'I will give you $3,000.00 for the lease provided you will still sell one-half of the 55 acres of the royalty, 27½ acres for $100.00 base,' that was $2750.00 for the royalty and $3,000 for the lease."

The jury determined the issue in favor of plaintiffs and against defendants in answer to special issues Nos. 2, 3 and 4, above copied.

We have examined each of appellants' remaining propositions, and not finding any reversible error presented, they are respectfully overruled.

The judgment of the trial court is affirmed.

HALL, J., not sitting.