Virgil ALLEN, Appellant

v.

Henry ROBBINS, Appellee.

No. 10846.

Court of Civil Appeals of Texas.

Austin.

May 24, 1961.

Rehearing Denied June 14, 1961.

Arthur C. Riddle, Luling, Denver E. Perkins, Jerry L. Zunker, Gonzales, for appellant.

Tom Moore, Lockhart, for appellee.

GRAY, Justice.

Appellee, Henry Robbins, sued appellant, Virgil Allen, in trespass to try title to recover title and possession of a tract of land approximately six feet wide east and west, and 127 feet long north and south and located in the City of Luling, Caldwell County.

Appellee also alleged a right to recover under the three, five, ten and twenty-five years statutes of limitation.

The parties stipulated that E. L. Wilder. was the common source of title.

The record shows that appellee owns approximately 3¼th acres of land and that appellant owns approximately ¾ths acre of land. Appellee's land joins appellant's on the north and on the east. Both tracts are a part of a tract referred to as the B. R. Neal 4-acre tract and appellant's land is the southwest corner of that tract.

On February 25, 1946, E. L. Wilder and his wife conveyed to Lester Quicksall a tract of land out of the southwest corner of the B. R. Neal 4-acre tract. The tract was described by metes and bounds and as "containing three-fourths (¾) of an acre of land, more or less."

The land in controversy here lies along the east side of appellant's ¾ths acre tract.

Since February 25, 1946, the 3¼th acre tract and the ¾ths acre tract have remained separate tracts and each has, by deeds, changed ownership several times. Appellee acquired the 3¼th acres tract on January 29, 1954 by a deed from Kathleen Weber and others. Appellant acquired his ¾ths acre tract from Lum Toungate and wife by deed dated May 26, 1955.

The record shows that B. R. Neal, the owner of the 4-acre tract, resided there and

during his lifetime he built a house on the southwest corner of the 4-acre tract for a rent house. He separated the remaining portion of his land from the portion allotted to the rent house by a net wire fence. B. R. Neal ran livestock on his land and the fence was sufficient to confine the livestock to his premises. B. R. Neal died in 1937.

Since the two tracts of land were separated by the fence constructed by B. R. Neal the two tracts of land have been dealt with and conveyed as separate tracts. The record does not disclose that either has actually been surveyed on the ground. The only surveyor who testified at the trial said he surveyed appellee's land by the fences, but said he did not locate any corners; that it would be very difficult and expensive to do so, and that it would take three or four days.

The line on which the fence built by B. R. Neal was constructed is the line in controversy. Appellee claims title to the land up to that line and appellant asserts that his east boundary line is approximately six feet east of said fence.

Several witnesses who had lived on the tracts of land, and others who were familiar with the land, the fence and the uses made of the land, testified at the trial. There is no dispute as to the original location of the fence or that it has remained at its original location until it was torn down by appellant or his wife in 1955. The only dispute is as to the state of repair of such fence. There is evidence that the owners of the three and one-fourth acre tract kept horses and cows on it and that the fence was sufficient to confine them on the land.

· Up until appellant acquired the ¾ths acre tract there was never any dispute or controversy between the owners of the two tracts as to the boundary of the land, and from the time the fence was built by B. R. Neal prior to his death in 1937 it divided the two tracts.

Appellee said Mrs. Allen planted trees along the west side of the fence and that she had flowers there. He said that in 1955 Mrs. Allen asked him to let her tear the fence down to help the looks of her place; that he told her she could take it down but for her to leave the posts there because he wanted to put the fence back sometime, and that the fence was torn down one week and replaced the next week by Mrs. Allen with a new wire fence at the same location. This fence stood for about three years or until 1959 when it was taken down and the posts were removed.

Appellee said that on January 10, 1960, he built a fence along the old fence line without the Allens' permission. This fence was torn down by appellant February 22, 1960 and this suit was filed March 31, 1960.

Appellant testified that when he moved on the place there was a lot of net wire on the ground; that he hauled it off, and that he took it to be a yard fence. He said he built the fence back two or three months after he moved there "So we would have a yard fence," but that he took it down in May of 1959. He also said appellee built the fence back in January, 1960 and that he tore it down. Appellee said that after he moved on the place he and his wife used the strip of land in controversy as a lawn.

At a nonjury trial a judgment was rendered awarding appellee title and possession of the land sued for.

The trial court filed findings of fact and conclusions of law. He found that the fence line separating the two tracts of land is an established fence line it having been located on the ground for a period of time in excess of twenty-five years; that the fence line dividing the two tracts of land was acquiesced in and agreed upon by the prior owners of the tracts and that it correctly establishes the true boundary line between the two tracts; that appellee and his predecessors in title have claimed the old fence line as the correct boundary line between the two tracts since March 2, 1946, and that appellee has acquired title to the land sued for by limitation. He concluded that the land sued for is the property of appellee.

Appellant's first three points are to the effect that the trial court erred in permitting the witnesses Nichols, Mathews and Mrs. Louise Hill to testify that the fence between the two tracts of land was the recognized boundary line.

Dr. Nichols testified that he had been familiar with the tracts of land in question for at least forty years; that he knew the fence in question had been there since around 1935 or 1936. He was asked if the fence was the recognized dividing line between the two tracts and said "So far as I know it was the dividing line."

The witness Mathews testified that his grandfather lived in the house now owned by appellant from about 1943 to 1946; that he was familiar with the two tracts of land in question and recalled the wire fence east of appellant's house. He was asked if it was the recognized dividing line between the two tracts and he answered "Well, as far as I know, yes, sir."

Mrs. Louise Hill testified that from 1937 to 1942 she lived with her father who then owned the place now owned by appellee; that her father left the place in 1945 and that he kept livestock on the place. She recalled the wire fence in question and was asked and testified:

"Q. The fence-line there between the Allen house, what is now the Allen house, and the Robbins house, was the recognized boundary line separating the two properties, was it not? A. Yes, sir."

The witnesses Nichols and Mathews did not undertake to testify as to the general reputation in the community concerning the wire fence being the recognized boundary of appellant's land, but each limited his answer to his personal knowledge.

The testimony of Mrs. Hill does not say who recognized the fence line as the boundary. She was not asked and did not say that the community generally recognized the fence as the boundary line between the two tracts. She was testifying as to her father's possession and use of the 3¼ acre tract and as to the possession of the ¼th acre tract.

■ Even if, as appellant argues, the above witnesses were testifying as to the general reputation in the community as to the wire fence being the boundary of the ¼th acre tract of land without showing that the boundary had attracted interest in the neighborhood and had provoked discussion, the admission of the evidence in this trial before the court does not require a reversal. This is true because the judgment of the trial court must be sustained on appellee's plea of limitation rather than on boundary. Accepting appellant's argument the admission of the evidence did not change the legal situation before the court and the provisions of Rule 434, Texas Rules of Civil Procedure, are applicable. Moreover there is other evidence in the record to support the trial court's judgment and it will be presumed that improper evidence was not considered by the trial court. Texas Employers' Ins. Ass'n v. Polk, Tex. Civ.App., 269 S.W.2d 582. Er. ref., n. r. e.

Appellant's remaining points are to the effect that the findings of the trial court and his judgment are not supported by the evidence and are against the overwhelming weight of the evidence.

As already stated there is in the deeds to the ¼th acre tract a description of the tract by metes and bounds but the record does not show by actual survey, the location of the east line of the tract with reference to the wire fence. However the parties treat the question presented as though the called east line in the deeds is actually east of the wire fence.

■ We have set out the evidence supra and it shows that prior to appellant's acquisition of his tract all owners of the two tracts have used, occupied, enjoyed and conveyed the lands without dispute, controversy or question as to the location of the wire fence for a period of more than twenty-five

years. Appellant was the first person to claim land beyond the fence line and his claim began and was first asserted long after, at least twenty years, the two tracts were first separated by the fence.

In Anderson v. Atlantic Oil Producing Co., Tex.Civ.App., 83 S.W.2d 418, 419, er. ref., it is said:

"It is well settled that a line may be established as a true boundary line of a tract of land by recognition and acquiescence in said line as the true line by all interested parties for a sufficient length of time. The length of time for which such recognition and acquiescence must continue in order to conclusively establish such line is a period of time beyond that required by the statute of limitations for the acquisition of land by adverse possession. * * * A line thus established will control and become the true boundary line of the land, even though it may not be established on the line called for in the deed."

■ Moreover the fact that the prior owners of the land are presumed to have known the location of their boundaries their acquiescence in the location of the wire fence as separating the two tracts are circumstances of great weight in support of the trial court's findings. Runkle v. Smith, 63 Tex.Civ.App. 549, 133 S.W. 745.

■ It is our opinion that the great weight and preponderance of all of the evidence in this record shows that the fence line in question has been recognized and acquiesced in by all owners of the two tracts as a boundary line between the two tracts for more than ten years, and that appellee and his predecessors in title have used and enjoyed the land exclusively, for more than ten years and that such use was peaceable, open and adverse. The fact that the fence may have needed repairs from time to time would not defeat the title by limitation of ten years under Art. 5510, Vernon's Ann.Civ.St. Ogletree v. Evans,

Tex.Civ.App., 248 S.W.2d 804. Er. ref., n. r. e.

Appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.