

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00033-CV

---

HELEN BUTTS TIPPS, SUE ETHEL MCEACHERN, ESTATE OF
FLORA L. THOMPSON, PERRY THOMPSON, JR., INDEPENDENT EXECUTOR,
PERRY THOMPSON, JR., AND SANDRA SUE SARTAIN, Appellants

V.

CHINN EXPLORATION COMPANY AND CHEROKEE ROYALTY SYNDICATE,
HOWARD P. COGHLAN, RECEIVER, Appellees

---

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 2009-2036-A

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

The appearance of settled mineral ownership—which had surrounded three neighboring tracts of oil-and-gas-producing land in Gregg County since the late 1800s or early 1900s—was shattered beginning in late 2008 when three different lawsuits arose involving eight parties, one consolidation, multiple partial summary judgments, and two trials. One group of the parties generalized it well: "This case arises out of a convoluted set of facts and documents dating back to 1881, which are challenging to untangle, and which gave rise to a complicated procedural and legal history."

In fact, this contest is complicated enough to warrant a program listing that details the contestants and the prizes involved. Plaintiffs the Estate of Flora L. Thompson, Perry Thompson, Jr., as Independent Executor of the Thompson Estate, Perry Thompson, Jr., individually, and Sandra Sue Sartain, individually, are collectively referenced as Thompson. Plaintiffs Helen Butts Tipps and Sue Ethel McEachern are referenced herein as Butts. Defendant and Intervenor, Cherokee Royalty Syndicate, through its receiver Howard P. Coghlan, is referenced as Cherokee. Defendants Chinn Exploration Company and Chinn Family Limited Partnership are referenced as Chinn.

These parties are vying over mineral interests in three tracts of land, tracts called 137.5 acres, 6.6 acres, and 4.5 acres, respectively, in the Francisco Castro Headright Survey, A-236, in Gregg County, Texas. While there is no dispute that Thompson owns the first one-half undivided mineral interest in the 137.5 acres, the other one-half undivided mineral interest is claimed by Thompson, Butts, and Cherokee. The trial court ruled that Cherokee owned the

disputed mineral interest in the 137.5 acres. Thompson also claims fifty percent of the minerals in the 6.6 acres and twelve and one-half percent of the minerals in the 4.5 acres, those claims are contested by Chinn, and the trial court ruled that Chinn owned those disputed minerals.

We affirm the trial court's judgment in its entirety because (1) no evidence contradicts the finding that the 137.5 acres was entirely the community property of Martin Hughes and wife, Mariah Hughes, at the time of their ownership, (2) Thompson has not established error as to the 4.5 acres and 6.6 acres, and (3) res judicata bars Butts' claim that the May 30, 1919, "Transfer of Royalties" was unambiguous and that the instrument was improperly construed to convey the fee interest.

Procedurally, this hodgepodge of parties and claims was simplified by partial summary judgments disposing of the Thompson claims to the second one-half of the minerals in the 137.5 acres. By agreement, this was followed by two separate trials, the first regarding the 137.5 acres at which Butts tried to make the case for ownership of the 137.5 acres, and the second regarding the 4.5 and 6.6 acres. Thompson was not permitted to participate in the first trial because Thompson's claims to the second half of minerals in the 137.5 acres had been rejected by the summary judgments. The trial court entered a judgment and, several months later, held the second trial over the smaller tracts. It then signed a final judgment disposing of all parties and issues.

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An

3

appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id*. Where, as here, both parties file dispositive cross motions for summary judgment and the court grants one and overrules the other, the appellate court has jurisdiction to review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex*., 253 S.W.3d 184, 192 (Tex. 2007). Thus, in this case, we are to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id*.; *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied).

Procedurally, there is substantial dispute among the parties about the finality of the partial summary judgments, specifically as to the last-filed motion and amended motion for summary judgment presented by Thompson. Although the trial court had denied Thompson's first motion and granted an opposing motion by Cherokee, the final judgment indicates that the trial court did consider and explicitly ruled on the second motion.[1] It is also apparent from the record that, although the second motion did not formally ask for a reconsideration of the prior ruling, the trial court and the parties treated it as having done so. For those reasons, we treat the second summary judgment motion as before this Court on appeal.

---

[1]Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly. *Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2001); *Key Energy Servs., LLC v. Shelby County Appraisal Dist.*, 428 S.W.3d 133, 144 (Tex. App.—Tyler 2014, no pet.). A letter to counsel may constitute the pronouncement of judgment if it is in sufficient detail to state the court's decision on all the matters at issue and is filed with the clerk. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995); *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56 (Tex.1970). A letter is not a rendition of judgment if it only indicates the court's intention to render judgment in a certain way and sets out guidelines by which counsel are to draw a judgment. *Mixon v. Moye*, 860 S.W.2d 209, 210 (Tex. App.—Texarkana 1993, no writ). Similarly, if a letter contains the language of command that identifies an order, it is an order of the court. *Shubert v. J.C. Penney Co.*, 956 S.W.2d 634, 636 n.4 (Tex. App.—Texarkana 1997, writ denied).

4

*(1)     No Evidence Contradicts the Finding that the 137.5 Acres Was Entirely the Community
        Property of Martin Hughes and Wife, Mariah Hughes, at the Time of Their Ownership*

Thompson's theories revolve around the nature of the ownership of the undivided property in the late 1890s. They argue that the property was the separate property of Martin Hughes, despite the undisputed fact that he was married to Mariah Hughes when the property was acquired and was still married to her at the time that a portion was divided through partition into his name. Thompson's argument is based broadly on the lack of Mariah's name on the deed and partition documents. Neither of those proposed problems contradicts the presumptively community nature of the property.

In 1881, as now, Texas presumed that property obtained during a marriage was community in nature.[2] Community property, under the Texas Constitution and statutes, has been defined as property acquired during the marriage, except property received by gift, devise, or descent or recoveries for non-earnings-capacity personal injuries. TEX. CONST. art. 16, § 15; TEX. FAMILY CODE ANN. § 3.002 (West 2006); *see* TEX. FAMILY CODE ANN. § 3.001(2)–(3) (West 2006).

The community presumption is not contradicted by legal title in just one spouse. *See* TEX. PROP. CODE T. 2, App. Title Examination Standard 14.10. The Texas Supreme Court in 1891 approved language where a jury was told that, where deeds to property are made to either husband or wife during marriage, that property is presumed by law to be community property and that the presumption can be overcome by adequate proof. *Mitchell v. Mitchell*, 15 S.W. 705,

---

[2]Management of the property, however, was an entirely different matter. Before the 1913 statutory alterations, a husband managed everything—his separate property, all community property, and even the wife's separate property. *See generally*, William O. Huie, *Divided Management of Community Property in Texas*, 5 TEX. TECH L. REV. 623 (1974).

5

708 (Tex. 1891). "Where the grant or deed to community lands is in the name of the husband, the legal title to the lands is in him." *Burnham v. Hardy Oil Co.*, 195 S.W. 1139, 1143 (Tex. 1917). But legal title in the husband's name does not, alone, alter the community nature of the property, and the wife still can have an equally absolute estate or interest in the property. *Id.*

In this case, the uncontroverted evidence is that Martin and Mariah were married before the initial purchase of the property and remained married on the date of its division by partition. There is no evidence from any source to show that the property was Martin's separate property.

In a parallel argument, Thompson contends that, because Mariah was not separately named in the partition suit, it was invalid. If the partition were between the two spouses, she would have been a necessary party. The partition was not of the community estate, but was between the Hugheses and other owners. Under the state of the law at the time—because Mariah's interests were "protected" by her husband's management and representation and the law invested the husband with management of all property in which she had an interest—the absence of her name on the pleadings and partition is, again, irrelevant. *See McMurry v. McMurry*, 4 S.W. 357, 361 (Tex. 1887).

Thompson also argues that the partition was not viable because, at that time, community property could be partitioned only on divorce or death. *Martin v. Martin*, 17 S.W.2d 789, 792 (Tex. Comm'n App. 1929). Again, that argument is applicable only to a partition between spouses, not what happened here. We have been directed to no authority suggesting that such rule applies when property is partitioned between the community and other parties.

6

Starting with the presumption that property acquired during the course of a marriage is community, the trial court correctly concluded that the absence of Mariah's name was immaterial. Where the community is aligned, especially in light of the apparently typical practice a century ago of naming only the husband on behalf of the community, we see no logical reason to retroactively impose such a requirement. Indeed, one would not be required now. The interest was community.[3]

Thompson also complains of being excluded from the trial addressing the 137.5 acres. That complaint is based on a misunderstanding of summary judgment practice. The summary judgment ultimately granted before the trial disposed of Thompson's claims to the disputed minerals in the 137.5 acres and was final as to those claims.[4]

---

[3]Thompson also argues generally that, even if the interest was community, a smaller percentage of the mineral estate was Martin's separate property through descent, and thus Mariah had no right to more than a life estate of that portion. The relevant documents show that the property was purchased by four individuals in 1891, including Martin, his father Anderson Hughes, one of Martin's brothers, and another relative. In 1896, after the father's death, a partition of the property was pursued. Thompson argues that the partition necessarily also transferred some of Martin's share of his father's estate to him, and thus at least that amount (1/16) was necessarily his separate property.

    That analysis seems logical, if one makes certain assumptions. However, that does not *prove* that the analysis is necessarily correct and therefore requires us to decide at this late date that part of the property divided to Martin's interest was separate property by descent. Further, another layer of difficulty exists because the property came into his possession from his co-tenants through the partition and therefore again would at that point be deemed community in the absence of proof to the contrary. Counsel has directed us to no evidence relative to the father's death to show the disposition or extent of his estate or to indicate that no other agreements or transfers existed concerning the ultimate division of whatever estate the father had. We decline counsel's suggestion that we speculate about these matters.

[4]In a single paragraph in his brief, Thompson raises for the first time a contention that the 1919 conveyance from Mariah to Bryan J. Butts could be void due to the application of the Rule Against Perpetuities. Since this was not presented to the trial court, this issue is not preserved for our review. *See* TEX. R. APP. P. 33.1. Had this been presented to the trial court, this situation is controlled by the holding of *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991). As explained by the court, the lessor of a mineral estate retains a possibility of reverter in the minerals, and the owner of a mineral estate can sell or assign the possibility of reverter. The Rule Against Perpetuities would thus not be violated.

*(2)*     *Thompson Has Not Established Error as to the 4.5 Acres and 6.6 Acres*

In an issue relating solely to the second trial concerning the two smaller tracts, Thompson contends that the trial court erred by denying its claims against Chinn. As with the rest of the proceeding, no findings of fact or conclusions of law were requested. Therefore, the trial court is presumed to have made all findings of fact necessary to support its judgment, and we must affirm on any legal theory supported by the evidence. *Smith v. Harrison County, Tex.*, 824 S.W.2d 788, 792–93 (Tex. App.—Texarkana 1992, no writ).

As to these interests, Thompson asserts that a 1932 Deed to F.T. Rea, in cancellation of a Deed of Trust held by Rea, conveyed to Rea the mineral interests now claimed by Thompson. Chinn contests that claim.

To support the claims to mineral interests in these two tracts, Thompson pled causes of action for trespass to try title and to quiet title. The trial court explicitly ruled against Thompson on both bases. In its reply brief on appeal, Thompson suggests, for the first time, that this case was tried as a suit to quiet title rather than as a trespass-to-try-title claim and that the claim in trespass to try title had been abandoned by an amended pleading. Thompson's claim is belied by the trial court's final judgment categorically rendering a take-nothing judgment on Thompson's suit in trespass to try title and on the suit to quiet title. Thompson might have complained about the trial court's rendition of judgment in trespass to try title, but did not do so until the reply brief on appeal.

The Texas Rules of Appellate Procedure do not permit an appellant to raise an issue in a reply brief that was not included in the original brief. TEX. R. APP. P. 38.3; *Fox v. City of*

8

*El Paso*, 292 S.W.3d 247, 249 (Tex. App.—El Paso 2009, pet. denied). An issue raised for the first time in a reply brief is waived and need not be considered by an appeals court. *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.); *Fox*, 292 S.W.3d at 249; *Few v. Few*, 271 S.W.3d 341, 347 (Tex. App.—El Paso 2008, pet. denied); *Gray v. Woodville Health Care Ctr.*, 225 S.W.3d 613, 620 (Tex. App.—El Paso 2006, pet. denied); *see also Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996) (declining to consider issue first raised in reply brief). Accordingly, Thompson has failed to preserve for review the argument that judgment partially rendered on the basis of trespass to try title was improper because that particular claim had been previously abandoned.[5]

Even so, since Thompson seeks title, we believe fine distinctions about the precise type of action are inapt here. Although a claim seeking title to land is phrased differently, it can properly be characterized as a trespass-to-try-title claim. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 339 (Tex. App.—San Antonio 2006, pet. denied); *Aguillera v. The John G. & Marie Stella Kenedy Mem'l Found.*, 162 S.W.3d 689, 697 (Tex. App.—Corpus Christi 2005, pet. denied) ("[I]f the interested party's suit is in reality one for recovery of land based on equitable title, the action brought is considered a trespass-to-try-title suit and is not an action for declaratory judgment."); *see also Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex. App.—

---

[5]"It is not the proper function of this Court to create arguments for an appellant. We are restricted to addressing the arguments actually raised, not those that might have been raised." *Feagins v. Tyler Lincoln-Mercury, Inc.*, 277 S.W.3d 450, 455 (Tex. App.—Texarkana 2009, no pet.) (quoting *Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*, 792 S.W.2d 128, 134 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). We are thus prohibited from altering even an erroneous judgment in a civil case without a proper challenge to the error on appeal. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 303 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *In re E.A.F.*, 424 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A court of appeals may not reverse a trial court's judgment on grounds not raised on appeal. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

Texarkana 1991, no writ) ("Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title.").

Thompson seeks title. Also, the arguments on appeal have focused on whether Thompson has proven Thompson's chain of title, a discussion that is bottomed on a trespass-to-try-title claim. We address those arguments.

When suing in trespass to try title, a plaintiff wins and loses on the strength of his or her own title. *Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981); *Land v. Turner*, 377 S.W.2d 181 (Tex. 1964). Recovery can be based on proof of (a) title through regular chain of conveyances from the sovereign, (b) superior title out of a common source, (c) title by limitations, or (d) unabandoned prior possession of the land. *Plumb*, 617 S.W.2d 667; *Session v. Woods*, 206 S.W.3d 772, 779 n.2 (Tex. App.—Texarkana 2006, pet. denied).

Thompson made no effort to prove title from the sovereign, by limitations, or by unabandoned prior possession. Thompson argues that there was in the record "documentary evidence dated after March 6, 1931, that established Thompson's unbroken chain of title to an undivided mineral interest in the two small tracts." Those tracts belonged to Anderson and Amanda Hughes. The theory used was superior title out of a common source, the 1891 deed to Martin Hughes.

In a trespass-to-try-title context, to prevail the plaintiff must prove superior title. That was not done in this case. The problem lies in Thompson's failure to prove that title resides with this plaintiff. A link submitted in Thompson's proof is in 1946 to Perry Thompson, not Perry Thompson, Jr.

"To maintain an action of trespass to try title, the person bringing the suit must have title to the land sought to be recovered." *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.) (citing *Wall v. Carrell*, 894 S.W.2d 788, 797 (Tex. App.—Tyler 1994, writ denied); *Brownlee v. Sexton*, 703 S.W.2d 797, 799–800 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)). "A plaintiff[']s right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary." *Id.* (citing *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964); *Brownlee*, 703 S.W.2d at 799–800; *Wall*, 894 S.W.2d at 797). A plaintiff is not entitled to recover unless the plaintiff's own title is effectively disclosed. *Wall v. Carrell*, 894 S.W.2d 788, 797 (Tex. App.—1994, writ denied).

In a suit of this nature, it is "incumbent on the plaintiff to discharge the burden of proof resting on him to establish superior title." *Davis v. Gale*, 330 S.W.2d 610, 612 (Tex. 1960). On the failure of a plaintiff to establish superior title in a trespass to try title suit, the proper course of action is for the trial court to enter a take-nothing judgment. *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982). A take-nothing judgment in a trespass-to-try-title suit operates to divest the plaintiff of all interest in the lands in controversy and to vest the same in the defendant. *Halbert v. Green*, 293 S.W.2d 848 (Tex. 1956); *Glenn v. Lucas*, 376 S.W.3d 268, 273–74 (Tex. App.—Texarkana 2012, no pet.).

In this case, there is a failure by Thompson to complete the chain of title. The point of error is overruled.[6]

*(3)  Res Judicata Bars Butts' Claims that the May 30, 1919, "Transfer of Royalties" Was Unambiguous and that the Instrument Was Improperly Construed to Convey the Fee Interest*

Butts' claims as to the 137.5 acres fail due to the application of res judicata. A lawsuit directly addressing ownership, division, and concomitant right to lease this property was pursued to judgment in 1951, and Butts' ancestor and predecessor in title was a party to that suit.

Res judicata prevents the relitigation of a finally-adjudicated claim and related matters that should have been litigated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Under Texas' transactional approach to res judicata, a defendant must bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Barr*, 837 S.W.2d at 630. It requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

---

[6]Even if the trial court's ruling predicated on trespass to try title was incorrect, we believe it was correct on the basis of the quiet-title claim. A suit to quiet title is an equitable action used to establish that an adverse party's claim to property is invalid and to remove the cloud caused by the invalid claim from the owner's title. *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied); *see Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Id.*; *Vernon*, 390 S.W.3d at 61. The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387–88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *Vernon*, 390 S.W.3d at 61; *Carter*, 371 S.W.3d at 387–88. There was evidence, including many years' performance by parties and parties' predecessors, that supports the trial court's ruling denying Thompson's claim for a quiet title.

"People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Id.* at 652–53. Privity does not exist when persons are interested in the same question, but requires an identity of interest in the legal right actually litigated. *Tex. Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989); *Pyles v. Young*, No. 06-07-00066-CV, 2007 WL 4462738 (Tex. App.—Texarkana Dec. 21, 2007, no pet.) (mem. op.).

The suit, as shown by the statement of facts and judgment signed by the trial court in 1951, addressed in part who owned mineral interests in a number of pieces of property, including the 137.5 acres, and the percentages of the whole that each of the parties, including Butts, had a right to be paid for as a shareholder in Cherokee. Butts claims ownership through a party to that suit. Privity has been shown.

The documents at bar in this case were not the explicit subject of the 1951 proceeding, but they should have been litigated at that time if there had been any question about the ownership of interests that were being handled by Cherokee. The ownership of the mineral interests can be categorized as necessary to determine income to be paid to the various claimants based on their percentages of ownership interest. That would have been a perfect spot to try to clear up any perceived mistakes in the allocations among them. Res judicata therefore applies to these claims, and the trial court's issuance of judgment in favor of Chinn against Butts was proper on that basis.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:    March 19, 2014
Date Decided:     September 5, 2014

14